**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Capitol Specialty Insurance Corporation, | No. CV-21-00342-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Chaldean LLC, et al., | |
| Defendants. | |

Plaintiff Capitol Specialty Insurance Corporation ("Plaintiff" or "Capitol") moves for default judgment against the remaining defendants in this action: Chaldean, LLC ("Chaldean"), George Jajo ("Jajo"), and Isrrael Millan ("Millan") (collectively "Defendants") pursuant to Fed. R. Civ. P. 55(b)(2). (Doc. 46.)  For the following reasons, Plaintiff's motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff filed its Complaint on February 26, 2021, (Doc. 1) and then its First Amended Complaint on May 5, 2021 ("FAC"). (Doc. 22.)  The Court takes the FAC's factual allegations as true because the Clerk entered default (Doc. 45). *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

The FAC alleges claims for common law fraud and statutory fraud against all Defendants, breach of contract against Defendants Jajo and Chaldean, and unjust

enrichment against Defendant Millan.  (Doc. 22 ¶¶ 53-79.)  The Court has jurisdiction to hear this action and over the Defendants.[1]

The basis for this action is as follows: On May 31, 2019, Defendant Millan, along with another individual who is not named in this suit, rented a U-Haul truck and purchased $1,000,000 in liability coverage through an entity called Repwest.  (*Id.* ¶ 17.)  On June 2, 2019, that U-Haul truck "intentionally . . . backed into the Sunshine Market storefront," which is owned and operated by Defendants Chaldean and Jajo.  (*Id.* ¶¶ 12, 20-21.)

On June 6, 2019, Defendant Jajo opened Claim No. 197363 with Plaintiff, "alleging that a U-Haul vehicle . . . backed into the Sunshine Market storefront, causing damage to the building and personal property inside the building, including contents and inventory." (*Id.* ¶ 20.)  Around that time, Defendant Jajo "hired" Defendant Millan and his company, Patron Construction, "to act as the general contractor to repair and remediate the self-inflicted damage to Sunshine Market."  (*Id.* ¶ 23.)  When another entity was hired to adjust Sunshine Market's loss, it observed that "the entire interior was gutted, including all fixtures and inventory."  (*Id.* ¶ 25.)  Although Defendant Jajo claimed that Defendant Millan and his company "disposed of all the broken and damaged inventory and personal property . . . [he] [did] not have documentation of the items that were allegedly tossed away."  (*Id.* ¶ 26.)

Plaintiff then retained another entity, Servpro, to assist "with documenting and counting the Sunshine Market inventory to determine the amount of damages and/or expired items remaining in the store." (*Id.* ¶ 28.)  However, Defendant Jajo fired Servpro and it was never able to complete its work, and Defendant Millan tried to further interfere by reaching out to another person to "dispute Servpro's work and pricing."  (*Id.* ¶¶ 31–32.)  After Defendant Jajo fired Servpro, it "hired" Defendant Millan to "assist Chaldean in documenting its business personal property loss."  (*Id.* ¶ 33.)

---

[1] Before assessing the merits of Plaintiff's motion for default judgment, the Court must confirm that it has subject-matter jurisdiction over the case and personal jurisdiction over Defendants.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Here, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.  (Doc. 1 ¶¶ 1–4, 8.) The Court also has personal jurisdiction over each defendant. (*Id.* ¶¶ 2–4.)

Documents were created, collected, and presented to Plaintiff, and Plaintiff paid Defendant Chaldean, pursuant to Claim No. 197363 and the policy, the following amounts: (1) $171,176.96 in building coverage; (2) $21,938.14 in business personal property coverage; and (3) $9,256.00 in business income coverage. (*Id.* ¶¶ 34–37.)

After Plaintiff's investigation into the claim, it concluded that Defendant Jajo, "in collusion" with Defendant Millan (and another individual), "orchestrated" the June 2, 2019 incident and filed a fraudulent insurance claim. (*Id.* ¶ 44.) Plaintiff asserts that the June 2, 2019 incident does not constitute a covered cause of loss under its policy because "it was a result of Defendants' dishonest and/or criminal acts." [2] (*Id.* ¶¶ 43, 45.) Plaintiff seeks monetary damages in the amount it paid to Defendant Chaldean, which totals $202,371.10. (*Id.* at 14, ¶ 1.)

Despite being served with the Complaint and summons (Docs. 6, 7, 31), Defendants failed to file an answer or otherwise respond to the Complaint or FAC. To date, Defendants' counsel only filed two notices of appearances—one from April 2021 and one less than a week ago—as well as a response to an order to show cause why he failed to appear at a court-ordered status conference. (Docs. 10, 53, 54.) Plaintiff applied for default against Defendants (Doc. 43), which the Clerk of Court entered on February 18, 2022. (Doc. 45.) Plaintiff filed the pending motion on February 18, 2022 (Doc. 46), and Defendants have failed to respond.

## II.   DISCUSSION

### A.   Default Judgment

Once a default is entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Brooke v. Sai Ashish Inc.*, No. 1:21-cv-00967-AWI-SAB, 2021 WL 4804220, at *5 (E.D. Cal. Oct. 14, 2021) (explaining that default judgment "is a two-step process: an entry of default judgment must be preceded by an entry of default").

---

[2] The United States Attorney's Office indicted Defendant Jajo and Defendant Millan for multiple counts of conspiracy, wire fraud, and transactional money laundering in connection with these events. (*Id.* ¶ 41.)

The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *New Gen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). As the party seeking default judgment, Capitol "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Ronald Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *2 (D. Ariz. Oct. 18, 2021). Capitol also bears the burden of proving all damages. *Assaf v. Carp*, 2018 WL 6051514, at *1 (C.D. Cal. June 5, 2018) ("On a motion for default judgment, Plaintiffs carry the burden of proving up their damages" by providing "detailed affidavits and supporting exhibits.").

1. Possible Prejudice to Plaintiff

The first *Eitel* factor weighs in favor of granting the motion because Plaintiff will be prejudiced if default judgment is not entered. The record reflects that Plaintiff gave proper notice (Docs. 6, 7, 31), but Defendants, some of whom are represented by counsel, have not responded.

"Normally, an appearance in an action involves some presentation or submission to the court. . . [b]ut because judgments by default are disfavored, a court usually will try to find that there has been an appearance by defendant." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988) (internal citations and quotations omitted). Despite the Court's best efforts to "try to find that there has been an appearance by [Defendants]" it cannot ignore the fact that Defendants' counsel has failed to litigate this case, failed to adhere to a Court order requiring him to file a joint status

report, and failed to attend a required status conference by Court order, which resulted in an order to show cause. (Docs. 49, 51.)   The Court also cannot ignore that Defendants' response to the order to show cause—after failing to appear at the status conference or participate in the joint status report—did not at all indicate whether they intend to defend this action that was initiated almost a year and a half ago. (Docs. 51, 53.)

If Plaintiff's motion is not granted, it "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Therefore, the first factor weighs in favor of default judgment.

### 2. Merits of Plaintiff's Claims

The second *Eitel* factor also weighs in favor of granting the motion. This factor requires a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

Plaintiff alleges that Defendant Jajo and Defendant Chaldean breached the underlying insurance contract/ policy. (Doc. 22 ¶¶ 53–56.) Plaintiff sufficiently alleges that there was "a contract, a breach of contract, and damages." *Best W. Int'l, Inc. v. Patel*, 523 F. Supp. 2d 979, 988 (D. Ariz. 2007) (citing *Graham v. Asbury*, 112 Ariz. 184, 185 (1975)).

Plaintiff alleges an unjust enrichment claim against Defendant Millan. (Doc. 22 ¶¶ 76–79.) Plaintiff alleges that there was an "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Premier Funding Grp. LLC v. Aviva Life & Annuity Co.*, No. CV-14-01633-PHX-DGC, 2014 WL 6885732, at *9 (D. Ariz. Dec. 8, 2014) (quoting *Freeman v. Sorchych*, 226 Ariz. 242, 251 (Ct. App. 2011)).

Plaintiff also alleges that all Defendants committed common law fraud. (Doc. 22 ¶¶ 57–63.) Plaintiff appropriately alleges Defendants made "(1) a representation; (2) that was false; (3) material; (4) the speaker had knowledge of its falsity or ignorance of its truth; (5) the speaker intended that it should be acted upon by the person and in the manner

reasonably contemplated; (6) the listener was ignorant of its falsity; (7) relied on its truth; (8) such reliance was justified; and (9) the listener suffered consequent and proximate injury." *Blau v. Am.'s Servicing Co.*, No. CV-08-773-PHX-MHM, 2009 WL 3174823, at *3 (D. Ariz. Sept. 29, 2009) (citing *Enyart v. Transamerica Insurance Co.*, 195 Ariz. 71 (Ct. App. 1998)).

Based on the facts described above and in the FAC, Plaintiff has pled a prima facia case that all Defendants engaged in common law fraud, Defendants Jajo and Chaldean breached the insurance contract/ policy, and that Defendant Millan has been unjustly enriched.

Plaintiff also alleges that all Defendants engaged in fraudulent activities pursuant to A.R.S. §§ 20-463, 44-1220, and 13-2310. (Doc. 22 ¶¶ 64–75.) The Court will deny default judgment as to this claim, Count III, because Plaintiff seeks relief under criminal statutes, and "[t]here is no private right of action for violations of criminal statutes." *McKenna v. HP Inc.*, No. CV-21-08271-PCT-JAT, 2021 WL 5988598, at *2 (D. Ariz. Dec. 17, 2021) (citing *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006)). The Court will also dismiss Court III because, as explained above, Plaintiff cannot possibly win relief under this claim. *Parker v. Arizona*, No. CV-21-01143-PHX-DJH, 2021 WL 3623148, at *1 (D. Ariz. Aug. 9, 2021) ("[T]he Court retains the inherent authority to *sua sponte* dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) . . . [s]uch a dismissal may be made without notice where the claimant cannot possibly win relief.") (citing *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981)).

### 3. Sufficiency of the FAC

The third *Eitel* factor also favors granting the motion. Based on the Court's analysis of the merits of Plaintiff's claim, nothing suggests that the FAC fails to state a facially plausible claim for relief for breach of contract, common law fraud, or unjust enrichment. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As discussed above, Plaintiff's claim for statutory fraud will be dismissed without prejudice.

### 4. Amount at Stake

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). In contrast to a complaint's other allegations, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). A district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993).

Here, Plaintiff seeks $202,371.10 plus pre- and post-judgment interest in compensatory damages, as well as attorneys' fees and costs. (Doc. 46 at 11.) As discussed below, the Court will award the requested damages. The Court finds that, based on Plaintiff's claim for breach of contract, common law fraud, and unjust enrichment, the stated damages are not disproportionate, and Plaintiff is entitled to $202,371.10 plus pre- and post-judgment interest in damages.

### 5. Possible Dispute Concerning Material Facts

The fifth *Eitel* factor favors granting the motion because there is no dispute concerning material facts. Defendants have not responded to this action in the nearly fifteen months that it has been pending. (Doc. 1.) As noted, upon entry of default, the factual allegations of the FAC are taken as true (except those relating to the amount of damages). *See Fair Housing of Marin.*, 285 F.3d at 906. There is therefore no dispute concerning material facts at this juncture.

### 6. Whether Default Was Due to Excusable Neglect

The sixth *Eitel* factor also favors granting the motion. Defendants, some of whom are represented by counsel, have had multiple opportunities to respond to action over the past seven months but have failed to do so, and they offered no explanation for their failure to appear. It is therefore highly unlikely that Defendants' "failure to answer and the

resulting default was a result of excusable neglect." *Gemmel v. Systemhouse, Inc.*, No. CIV 04-198-TUC-CKJ, 2008 WL 65604, at *5 (D. Ariz. Jan. 3, 2008).

       7.      <u>Policy Underlying the Federal Rules of Civil Procedure</u>

The final factor—the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits—weighs against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The existence of Fed. R. Civ. P. 55(b), however, indicates that "this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal citation omitted). Rule 55 permits termination of a case before the Court hears the merits when a defendant fails to defend an action. Moreover, a defendant's failure to contest the FAC or seek relief from the Clerk's entry of default "makes a decision on the merits impractical, if not impossible." *Id.* The final *Eitel* factor is therefore insufficient to preclude the Court from entering default judgment.

Having reviewed Plaintiff's motion and analyzed the factors set forth in *Eitel*, the Court finds that factors one through six weigh in favor of granting Plaintiff's motion. The final *Eitel* factor is not sufficient to outweigh the first six factors. Therefore, for the reasons set forth herein, the Court concludes that Plaintiff is entitled to default judgment.

    **B.**    **Damages**

Having found that entry of a default judgment is proper, the only remaining issue is one of damages. In contrast to the other allegations in a complaint, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *Fair Housing of Marin*, 285 F.3d at 906. Nonetheless, a district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James*, 6 F.3d at 310.

Plaintiff requests entry of judgment without a damages' hearing in the amount of $202,371.10, which was paid to Chaldean under Claim No. 197363 and the policy. (Doc. 22 ¶ 37.) That amount comprises of (1) $171,176.96 in building coverage; (2) $21,938.14 in business personal property coverage; and (3) $9,256.00 in business income coverage. (*Id.*; Doc. 46 at 11.) Plaintiff also seeks pre- and post-judgment interest, and attorneys'

fees and costs. (*Id.*) This is less than the amount prayed for in the FAC, which, in addition to the aforementioned items, also requested interest on punitive damages, pre- and post-judgment interest, and attorneys' fees and costs. (Doc. 22 at 14-15.)

Rule 54(c) of the Federal Rules of Civil Procedure requires that a default judgment "not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiff's motion for default judgment requests a subset of those damages requested in the FAC; it does not request damages "different in kind" or in excess of those in the FAC. *Id.* The Court concludes that Plaintiff's FAC provided Defendants with "sufficient notice . . . of the potential award," enabling them "to decide whether to respond to the complaint in the first instance." *Fisher Printing Inc. v. CRG LTD II LLC*, No. CV-16-03692-PHX-DJH, 2018 WL 603299, at *3 (D. Ariz. Jan. 22, 2018).

The Court may enter a default judgment without a damages hearing when, as here, "the amount claimed is a liquidated sum or capable of mathematical calculation." *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 947 (D. Ariz. 2013) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)). In this case, the requested damages are a definite sum comprised of specified payments that Plaintiff made to Defendant Chaldean comprising of building coverage, business personal property, and business income coverage. (Doc. 46 at 9.) The requested damages are also supported by the Declaration of Charles Lynch, Plaintiff's Claims Counsel, and accompanying documents. (Docs. 46-1, 46-2.) *See Doe v. United States*, No. CV-17-01991-PHX-GMS (JZB), 2018 WL 2431774, at *8 (D. Ariz. May 30, 2018) ("In determining damages, a court can rely on declarations submitted by the plaintiff[.]") (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal 2003)).

The Court finds that Plaintiff's motion, the Declaration of Charles Lynch, and attached exhibits sufficiently establish the amount of damages suffered by Plaintiff. (Docs. 46, 46-1, 46-2.) The Court will enter default judgment against Defendants, jointly and severally, in the amount of $202,371.10, plus pre- and post-judgment interest. Should Plaintiff seek attorneys' fees and costs, it shall file its fee application with the Court.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Capitol Specialty Insurance Corporation's Motion for Entry of Default Judgment (Doc. 46) with respect to Counts I, II, and IV, and denying default judgment with respect to Count III.

**IT IS FURTHER ORDERED** dismissing Count III without prejudice.

**IT IS FURTHER ORDERED** awarding Capitol Specialty Insurance Corporation $202,371.10 plus pre- and post-judgment interest at the applicable statutory rate in compensatory damages against Defendants, jointly and severally.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case and to enter judgment accordingly.

**Dated this 25th day of July, 2022.**

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge